**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RICHARD U. HEPPLER, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA LIQUOR CONTROL | : | NO. 10-3430 |
| BOARD, et al., | : | |
| Defendants. | : | |

**MEMORANDUM REGARDING MOTION TO DISMISS**

**Baylson, J.**                                                          **July 18, 2011**

**I.     Introduction**

Plaintiff Richard Heppler ("Heppler") commenced this case pro se against Defendants

Patrick J. Stapleton III ("Stapleton") and the Pennsylvania Liquor Control Board ("PLCB")

(collectively, "Commonwealth Defendants") for alleged violations of the Equal Protection

Clause of the Fourteenth Amendment to the United States Constitution and Section 2 of the

Sherman Act.  (Am. Compl., ECF No. 9.)  Presently before the Court is Defendants' Motion to

Dismiss Heppler's Amended Complaint for lack of jurisdiction because Defendants are entitled

to sovereign immunity under the Eleventh Amendment.  (Mot. to Dismiss., ECF No. 10.)  The

immediate issue is whether the PLCB is an "arm" or "alter ego" of the Commonwealth of

Pennsylvania and thus entitled to Eleventh Amendment immunity from suit in federal court.  On

June 22, 2010, the Court entered an Order granting the Motion.  (Order, ECF No. 23.)  This

Memorandum will state the reasons.

## II.   **Factual and Procedural Background**

The relevant facts, construed in the light most favorable to Heppler, are set forth below.[1] Heppler owns and operates a private liquor business called Spirits of Valley Forge. (Am. Comp. at 1.) Heppler alleges that Commonwealth Defendants have monopolized and prevented his access to the Pennsylvania liquor market. (Id. at 2-4.) Heppler seeks injunctive, declaratory and monetary relief for his injuries. (Id. at 1.)

On July 7, 2010, Heppler filed his original Complaint against the Commonwealth Defendants. (Compl., ECF No. 1.) Defendants then moved to dismiss the Complaint. (Mot. to Dismiss, ECF No. 7.) The Court granted the Motion to Dismiss, but allowed Heppler thirty (30) days to file an Amended Complaint. (Order, ECF No. 8.) Heppler filed an Amended Complaint on Dec. 16, 2010. (Am. Compl.) Defendants moved to dismiss the Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Mot. to Dismiss, ECF No. 10.) Heppler responded in opposition to the Motion to Dismiss. (Resp., ECF No. 12.) In response to the Court's order, the Commonwealth Defendants submitted supplemental briefing on the issue of their entitlement to sovereign immunity under the Eleventh Amendment. (Order, ECF No. 14; Suppl. Mem. of Law, ECF No. 17.) On May 23, 2011, Heppler filed a Reply to Defendants' Supplemental Memorandum and then, on June 20, 2011, filed an Amended Reply. (Reply, ECF No. 20; Am. Reply, ECF No. 21.)

---

[1]    "[A] pro se petitioner's pleadings should be liberally construed to do substantial justice." United States v. Garth, 188 F.3d 99, 108 (3d Cir. 1999).

**III.**     <u>**Jurisdiction and Legal Standards**</u>

     **A.**     **Jurisdiction**

The Court has jurisdiction over Heppler's § 1983 and Sherman Act claims under 28 U.S.C. § 1331.

     **B.**     **Legal Standards**

Under a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the plaintiff usually bears the burden of persuasion that the court has subject matter jurisdiction, <u>Kehr Packages, Inc. v. Fidelcor, Inc.</u>, 926 F.2d 1406, 1409 (3d Cir. 1991), except where the defendant is asserting sovereign immunity. <u>See</u> <u>Christy v. Pa. Tpk. Comm'n</u>, 54 F.3d 1140, 1144 (3d Cir. 1995) (concluding that the Eleventh Amendment claim of sovereign immunity should be treated as an affirmative defense and therefore must be proven by the asserting party).

There are two categories of Rule 12(b)(1) motions: a facial attack on the complaint, and a factual attack that challenges the plaintiff's facts "at any stage of the proceedings, from the time the answer has been served until after the trial has been completed." <u>Mortensen v. First Fed. Sav. & Loan Ass'n</u>, 549 F.2d 884, 891-92 (3d Cir. 1977). The assertion of Eleventh Amendment immunity as a defense is properly treated as a facial challenge. <u>Urella v. Pa. State Troopers Ass'n</u>, 628 F. Supp. 2d 600, 604 (E.D. Pa. 2008). "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." <u>Gould Elecs., Inc. v. United States</u>, 220 F.3d 169, 176 (3d Cir. 2000). When considering a facial attack, "the Court must consider the allegations of the complaint as true." <u>Mortensen</u>, 549 F.2d at 891. "[A] dismissal for lack of subject matter jurisdiction is not an adjudication on the merits and thus should be ordered

'without prejudice.'"  Figueroa v. Buccaneer Hotel, Inc., 188 F.3d 172, 182 (3d Cir. 1999); see also Korvettes, Inc. v. Brous, 617 F.2d 1021, 1024 (3d Cir. 1980) ("A dismissal for lack of jurisdiction is plainly not a determination of the merits of a claim.").

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true all well-pleaded factual allegations and must construe them in the light most favorable to the non-moving party.  Phillips v. County of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008).  The Third Circuit has addressed the effect of the Supreme Court's most recent pleading-standard decisions, Twombly v. Bell Atlantic Corp., 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).  See Phillips, 515 F.3d at 233-34.  Twombly established a three-pronged approach for all civil actions: first, the court must identify the elements plaintiff must plead to state a claim; second, the court asks whether the complaint sets forth factual allegations or conclusory statements; third, if the complaint sets forth factual allegations, the court must assume their veracity and draw reasonable inferences in favor of the non-moving party, but then must determine whether the factual allegations plausibly give rise to an entitlement to relief.  Santiago v. Warminster Twp., 629 F.3d 121, 130 n.7 (3d Cir. 2010); see Iqbal, 129 S. Ct. at 1950, 1953.  For the second step, the court should separate the factual and legal elements of the claims, accepting the well-pleaded facts as true and disregarding any legal conclusions.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

To state a claim, a plaintiff must allege circumstances with enough factual matter to suggest the required claim exists.  Phillips, 515 F.3d at 234.  This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of the claims.  Iqbal,

129 S. Ct. at 1949; <u>Phillips</u>, 515 F.3d at 234.  Pleading standards are not the same as standards of proof.  <u>See Fowler</u>, 578 F.3d at 213-14.

Whether a claim is plausible depends on the context, i.e. the nature of the claim asserted. <u>Phillips</u>, 515 F.3d at 233.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to reasonably infer that the defendant is liable for the misconduct alleged. <u>Gelman v. State Farm Mut. Auto. Ins. Co.</u>, 583 F.3d 187, 190 (3d Cir. 2009).

## IV.    **The Parties' Contentions**

Heppler claims that Commonwealth Defendants have discriminated against him in violation of the Equal Protection Clause of the Fourteenth Amendment by not allowing him access to the Pennsylvania liquor market.  (Am. Compl. at 2.)  Specifically, Heppler alleges that his products were arbitrarily removed from the Pennsylvania market and that three of his applications to introduce certain products to the market were denied without reason.  (<u>Id.</u> at 3.) Heppler further alleges that Defendants have monopolized the Pennsylvania liquor market and have transformed the PLCB from a regulatory agency into a "For Profit Business."  (<u>Id.</u> at 2-4.)

The Commonwealth Defendants contend that Heppler's claims should be dismissed for lack of subject matter jurisdiction and for failure to state an equal protection claim.  (Mot. to Dismiss at 4-5.)  They assert that both the PLCB and Stapleton are entitled to sovereign immunity under the Eleventh Amendment, which deprives the Court of jurisdiction over Heppler's claims.  (<u>Id.</u> at 4.)  They also assert that Heppler has failed to allege Commonwealth Defendants purposefully discriminated against him.  (<u>Id.</u> at 5.)

V.      **Discussion**

     A.      **Eleventh Amendment Immunity**

This case requires the Court to determine whether the PLCB is an arm of the Commonwealth of Pennsylvania and thus entitled to Eleventh Amendment immunity from suit. The Eleventh Amendment provides that "the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has interpreted the Amendment to immunize an unconsenting state from actions brought in federal courts by her own citizens. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). Absent consent to suit by the state or clear abrogation of the immunity by Congress, the Eleventh Amendment insulates from suit the state units that are extensions of the state. Alabama v. Pugh, 438 U.S. 781, 782 (1978); see Quern v. Jordan, 440 U.S. 332, 345 (1979) (concluding § 1983 does not abrogate the Eleventh Amendment immunity).

As long as the state is the real party in interest, a suit is barred by the Eleventh Amendment even though a state is not named a party to the action. Edelman v. Jordan, 415 U.S. 651, 663 (1974). A state agency is entitled to immunity from suit in federal court when a judgment against it "would have had essentially the same practical consequences as a judgment against the State itself." Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency, 440 U.S. 391, 401 (1971). The party asserting immunity bears the burden of production and persuasion. Christy, 54 F.3d at 1144.

B.      <u>Fitchik</u> and Its Progeny

The question of whether the PLCB is an arm of the State is one of federal law.  <u>Blake v. Kline</u>, 612 F.2d 718, 722 (3d Cir. 1979).  In <u>Fitchik</u>, the Third Circuit set forth the criteria for determining whether an entity is an arm of a state for purposes of the Eleventh Amendment. <u>Fitchik v. N.J. Transit Rail Operations, Inc.</u>, 873 F.2d 655, 659 (3d Cir. 1989).  The Third Circuit identified three questions: (1) whether the money that would pay for the judgment would come from the state (this includes three considerations: whether payment will come from the state's treasury, whether the agency has the money to satisfy the judgment, and whether the sovereign has immunized itself from responsibility for the agency's debts); (2) the status of the agency under state law (this includes four considerations: how state law treats the agency generally, whether the entity is separately incorporated, whether the agency can sue or be sued in its own right, and whether it is immune from state taxation); and (3) what degree of autonomy the agency has.  <u>Id.</u>  Under this three-pronged inquiry, no single factor is dispositive and all factors are to be weighed equally.  <u>See</u> <u>Benn v. First Judicial Dist. of Pa.</u>, 426 F.3d 233, 239-40 (3d Cir. 2005) (concluding that, after the Supreme Court decision in <u>Regents of the University of California v. Doe</u>, 519 U.S. 425 (1997), the first factor can no longer be accorded greater weight).[2]

Prior to the Third Circuit establishing the <u>Fitchik</u> test, Judge Luongo held that the PLCB

---

[2]      Relying solely on <u>Fitchik</u>, Defendant's Supplemental Memorandum of Law incorrectly suggests that the first factor is "the most important factor."  (Suppl. Memo. at 3.) While historically the Third Circuit has regarded the first criterion as the most important consideration, after <u>Benn</u> the first factor is considered co-equal with the others in the immunity analysis.  <u>Benn</u>, 436 F.3d at 239-40; <u>Febres v. Camden Bd. of Educ.</u>, 445 F.3d 227, 229-30 (3d Cir. 2005).

is an arm of the state for Eleventh Amendment purposes.  <u>Savage v. Pennsylvania</u>, 475 F. Supp

524, 530 (E.D. Pa. 1979).  While no court has applied the <u>Fitchik</u> factors to the PLCB since that

test was established, the Third Circuit in <u>Christy v. Pennsylvania Turnpike Commission</u> did

apply the <u>Fitchik</u> test to the Pennsylvania Turnpike Commission, an agency that, as the PLCB,

Pennsylvania law defines as "independent."  <u>Christy</u>, 54 F.3d at 1144-50; <u>see</u> 71 Pa. Stat. §

732-102 (West 1997) (listing the Pennsylvania Turnpike Commission and the PLCB under the

designation "independent agency," as opposed to "executive agency").

      The <u>Christy</u> court held that the Pennsylvania Turnpike Commission is not an arm of the

state and therefore is not protected from suit by Eleventh Amendment immunity.  <u>Christy</u>, 54

F.3d at 1150.  The Court reasoned that because the Commission failed to establish that (1) a

judgment against it would be equivalent to a judgment against the State Treasury, (2) it lacked

the financial resources to pay a potential judgment against it and (3) Pennsylvania would be

obligated to cover a potential judgment against the Commission, the funding factor weighed

heavily in support of the finding that the Commission is not an arm of the state.  <u>Id.</u> at 1147-48.

      As for the second factor, the Court gave weight to the fact that the Pennsylvania Supreme

Court recognized the Commission as separate and apart from the Commonwealth and the fact

that the Commission could sue and be sued in its own name and enter into contracts in its own

name.  <u>Id.</u> at 1148-49.  The question of the Commission's autonomy – the third factor – was the

only factor which weighed slightly in favor of granting immunity, primarily because the

Governor appoints and the Pennsylvania Senate approves the Commission's members.  <u>Id.</u> at

1149.  The <u>Christy</u> court found that because the first factor and second factor weighed heavily

against granting immunity, and the third factor weighed only slightly in favor of granting

immunity, the Commission was not an arm of the state and therefore not entitled to sovereign immunity.  Id. at 1150.

      **C.**      **<u>Fitchik</u> and <u>Christy</u> Analysis of the PLCB**

           **1.**      **Funding**

               **a.**      <u>Whether Payment Will Come from the State's Treasury</u>

The first issue is whether the state treasury is legally responsible for the payment of a judgment against the PLCB.  <u>Fitchik</u>, 873 F.2d at 660.  In attempting to determine the source of payment for a judgment, the Fitchik court examined the relevant financials contained in the New Jersey Transit Annual Report, <u>see id.</u> (detailing the various sources of operating revenue, including passenger fares and federal and state subsidies), and found that the percentage of money New Jersey Transit received was not predominantly from the state.  <u>Id.</u>  In instances where the detailed financials for a given agency are unavailable, courts have considered how many of the agency's sources of funding are state-derived.  <u>Christy</u>, 54 F.3d at 1145.

The PLCB obtains its revenue from the sale of liquor.[3]  While the Pennsylvania Liquor Code allows the PLCB to draw on money from The State Stores Fund, the money deposited in that Fund comes from the sale of liquor and not from a specific allotment from the State.  47 Pa. Stat. § 744-907.  Therefore, although payment of a judgment against the PLCB would be paid out of the State Stores Fund, this is a separate fund from the State Treasury that consists of revenue obtained from the sale of liquor.

---

      [3]    <u>See</u> Governor's Executive Budget July 2011-2012, Commonwealth of Pennsylvania, at E29.5, available at http://www.portal.state.pa.us/portal/server.pt/.../ 201112_budget_document_ pdf ("Revenues from the sale of wines and spirits cover the cost of merchandise sold in the stores, all costs of operating the Liquor Control Board and the cost of operating the Office of the Comptroller for the board.").

       b.      <u>Whether the Agency Has the Money to Satisfy the Judgment</u>

Commonwealth Defendants have not stated how much money the PLCB has or would have available to satisfy a potential judgment against it.  Nonetheless, the Court can reasonably infer the PLCB could pay a judgment from the surplus it transfers to the General State Fund or that, like the Pennsylvania Turnpike Commission in <u>Christy</u>, it could obtain sufficient funds by raising its revenues.  <u>See</u> <u>Christy</u>, 54 F.3d at 1146-47.

       c.      <u>Whether the Sovereign Has Immunized Itself from Responsibility for Agency's Debts</u>

While the Code does not contain a specific provision immunizing the Commonwealth from the PLCB's debts, it is reasonable to infer that the PLCB is expected to pay off its own debts because (1) there is a provision which mandates the transfer of the PLCB's surplus revenue to the State's General Fund, indicating solvency beyond its operating budget, and (2) any temporary loans made by the General Fund to the State Stores Fund must be repaid by the PLCB within the fiscal year.[4]  47 Pa. Stat. §§ 744-910 to 911.  Unlike in <u>Christy</u>, the Commonwealth has not expressly absolved itself of the PLCB's debts.[5]  These facts support the

---

[4]      Although the Code allows for the transfer of sums from the General Fund to the State Stores Fund, and provides that these sums "shall be available for the purposes for which the State Stores Fund is appropriated by law," the Code also requires that "all sums which shall have been transferred from the General Fund to the State Stores Fund during a fiscal year or period shall be returned to the General Fund not later than thirty days after the end of such fiscal year or period."  <u>See</u> Governor's Executive Budget July 2011-2012, Commonwealth of Pennsylvania, at H78 (itemizing "General Fund loan" line item in the PLCB receipts, with a corresponding "General Fund Loan repayment" of equal value in the PLCB disbursements).

[5]      For example, the Highway Code explicitly immunizes the Commonwealth from the debts of the Pennsylvania Turnpike Commission. See 36 Pa. Stat. § 653(b) (providing turnpike revenue bonds are not a debt of the Commonwealth and shall be paid exclusively from the fund into which toll revenue is deposited).

conclusion that the PLCB bears financial responsibility for any debt it incurs.

As in <u>Christy</u>, because the PLCB has failed to show that (1) a judgment against it would be a judgment against the State Treasury, (2) it lacks the financial resources to pay a judgment against it and (3) the Commonwealth bears the responsibility for paying the PLCB's debts, the funding factor weighs heavily against finding that the PLCB is an arm of the state entitled to sovereign immunity.

#### 2.    Status at State Law

##### a.    How State Law Treats the Agency Generally

Under <u>Fitchik</u>, the second factor asks whether Pennsylvania law treats the PLCB as an independent entity or as a surrogate for the state.  <u>Fitchik</u>, 873 F.2d at 662.  The Pennsylvania Commonwealth Court has held that the PLCB is an agency which is entitled to sovereign immunity pursuant to the state sovereign immunity statute, 42 Pa. Cons. Stat. Ann. § 8522(a). <u>See</u> <u>Garrettson v. Commonwealth</u>, 405 A.2d 1146, 1149 (Pa. Commw. Ct. 1979) (holding PLCB is an agency created by this Commonwealth and is clothed with immunity from suit); <u>Brey v. Commonwealth</u>, 381 A.2d 228, 229 (Pa. Commw. Ct. 1978) (finding PLCB is an instrumentality of the Commonwealth clothed with the Commonwealth's immunity).

However, state law extending sovereign immunity to an agency, while relevant to the Eleventh Amendment inquiry, is not determinative of Eleventh Amendment immunity.  <u>See</u> <u>Christy</u>, 54 F.3d at 1149 n.9.  The extension of state sovereign immunity to the PLCB indicates that the Commonwealth treats the PLCB as an arm of the state, but does not conclude the Court's analysis.

b.      Whether the Entity is Separately Incorporated

Under Fitchik, if an agency is separately incorporated, that fact weights against finding the agency to be an arm of the state.  See Febres, 445 F.3d at 230-31 (finding that, because Camden Board of Education is separately incorporated, this suggests that New Jersey does not consider the Board an arm of the state).  Conversely, because the PLCB does not appear to be separately incorporated, this fact indicates that the Commonwealth considers the PLCB an arm of the state.

c.      Whether the Agency Can Sue or Be Sued in Its Own Right

The Office of Chief Counsel for the Pennsylvania State Police represents the Bureau of Liquor Control Enforcement in all enforcement proceedings brought before the Office of Administrative Law Judge or any other adjudicatory body.  47 Pa. Stat. § 2-211(d).

The Office of Administrative Law Judge is an autonomous office within the PLCB appointed by the Governor and is responsible for presiding over all citation and enforcement hearings required under the Liquor Code.  Id. § 2-212.  The Enforcement Bureau has the power to cite a licensee to appear before an administrative law judge for violation of the Liquor Code. Id. § 4-471.  A licensee may appeal to the PLCB itself and then to the Court of Common Pleas should it feel aggrieved by the adjudication of the administrative law judge.  Id.

With the exception of a suit for damages caused by the sale of liquor to minors at state stores, the PLCB has state sovereign immunity which protects it from liability.  42 Pa. Cons. Stat. Ann. § 8522(a)(7).  Unlike the Pennsylvania Turnpike Extension Act, the Liquor Code does not explicitly state that the PLCB may sue and be sued in its own name.  Compare 36 Pa. Stat. § 653(e) (powers and duties of commission include the power to sue and be sued), with 47 Pa. Stat.

-12-

§ 2-207 (general powers of board do not include the power to sue and be sued).  Therefore, it appears the PLCB is unable to sue or be sued in its own right.

                    d.        <u>Whether Agency is Immune from State Taxation</u>

While the Commonwealth does tax the sale of alcohol, those taxes are paid into the State Treasury and into the General Fund.  47 Pa. Stat. § 8-803.  There is no indication from Defendants' supplemental brief or the Governor's Executive Budget that the PLCB must pay taxes on its property or any of its bonds to the Commonwealth.  However, unlike the Highway Code, the Liquor Code does not contain a provision stating that the PLCB is immune from state taxation.  <u>Compare</u> 36 Pa. Stat. § 653(m) (turnpike commission is not required to pay any taxes), <u>with</u> 47 Pa. Stat. § 8-803 (taxes on alcohol sales paid into the State Treasury and General Fund).  Because the PLCB does not pay a separate tax on its revenue to the Commonwealth or taxes on its property or bonds, this suggests that Pennsylvania state law considers the PLCB an arm of the state.

The four above considerations of the PLCB's status at state law suggest that the Commonwealth of Pennsylvania treats the PLCB as an arm of the state.  The Commonwealth extends state sovereign immunity, except in limited cases, to the PLCB, the PLCB does not appear to be separately incorporated, the PLCB cannot sue or be sued in its own right and the PLCB is not required to pay an additional tax on its income to the Commonwealth.  Therefore, the second factor weighs in favor of finding that the PLCB is entitled to sovereign immunity under the Eleventh Amendment.

                **3.**        **Autonomy**

State authority over the appointment of Board members lends support to a finding of

sovereignty.  See Christy, 54 F.3d at 1149. The PLCB consists of three members who are

appointed by the Governor of Pennsylvania with the advice and consent of two-thirds of the State

Senate.  47 Pa. Stat. § 2-201. The fact that the PLCB's membership is

controlled by the executive and legislative branches of the Commonwealth weighs against a

finding of autonomy.

Weighing in favor of a finding of autonomy are the facts that the PLCB may grant, issue,

and revoke all liquor licenses and permits, lease buildings for the operation of Pennsylvania

liquor stores, and make regulations it deems necessary for the efficient administration of the

Liquor Code.  Id. § 2-206; see Christy, 54 F.3d at 1149 (finding the Commission's power to fix

and revise tolls, contract in its own name, issue bonds and notes, purchase and own property, and

promulgate rules and regulations for its own governance, all weigh in favor of a finding of

autonomy). However, the PLCB's powers are subject to the provisions of the Administrative

Code and, in some instances, require the supervision of other state departments (for example, the

PLCB may only lease buildings through the Department of General Services). 47 Pa. Stat. §§

2-206, 2-207(e).

In Christy, the Third Circuit held that when the Commonwealth has the power to appoint

all the members of an agency, the balance weighs slightly in favor of granting immunity from

suit.  Christy, 54 F.3d at 1149-50.  Because the state has authority over the membership of the

PLCB, the Court concludes that the autonomy factor weighs slightly in favor of finding the

PLCB entitled to sovereign immunity under the Eleventh Amendment.

Ultimately, the Court concludes that the PLCB is entitled to sovereign immunity under

the Eleventh Amendment.  The second and third factors, status at state law and autonomy, both

weigh in favor of granting immunity, while only the funding factor weighs against granting immunity. Although the Third Circuit found that the Pennsylvania Turnpike Commission was not entitled to sovereign immunity, this case is distinguishable from <u>Christy</u> because (1) two of the three factors weigh in favor of granting immunity and (2) the funding factor, which weighs against granting immunity, is no longer controlling. Considering the factors equal, the balance favors finding the PLCB, and by extension its Chairman, Stapleton, entitled to sovereign immunity as an arm of the Commonwealth of Pennsylvania.

      **D.**    **Equal Protection Claim**

      Even if the Court concluded Commonwealth Defendants are not entitled to sovereign immunity, the Court would still grant the Motion to Dismiss on the merits of Heppler's claims. In order for a plaintiff to withstand a motion to dismiss, plaintiff must set forth factual allegations which plausibly give rise to an entitlement to relief. <u>Santiago</u>, 629 F.3d at 130 n.7; <u>see</u> <u>Iqbal</u>, 129 S. Ct. at 1950, 1953. A claim has facial plausibility when the factual content alleged by the plaintiff allows the court to reasonably infer that the defendant is liable. <u>Gelman</u>, 583 F.3d at 190. For the reasons that follow, the Court concludes that Heppler's equal protection claim fails to allege facts which plausibly give rise to an entitlement for relief.

      Heppler does not allege that he is a member of a suspect class. However, the Supreme Court has endorsed a "class of one" equal protection theory where the plaintiff can show he was intentionally treated differently from similarly situated individuals and there was no rational basis for the difference in treatment. <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000) (per curiam). "[A]t the very least, to state a claim under that theory, a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so

intentionally, and (3) there was no rational basis for the difference in treatment." Hill v. Borough
of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006).

Heppler sufficiently alleges that he was treated differently by Commonwealth Defendants
from other similarly situated entities.  Heppler's Amended Complaint alleges that (1) Heppler
was singled out by Commonwealth Defendants when they refused to allow him access to the
Pennsylvania market, (2) Commonwealth Defendants accepted other vendors' products, while
rejecting Heppler's products and barring them from the market and (3) the PLCB gave certain
vendors preferential treatment, in the form of free shipping, advertising and "superior market
position."  (Am. Compl. 1-3.)  These allegations suggest Heppler was singled out for different
treatment.

However, the Amended Complaint fails to allege facts that indicate that Commonwealth
Defendants intentionally discriminated against Heppler and that Commonwealth Defendants
were without a rational basis for their differential treatment of Heppler.  Nothing in Heppler's
allegations suggests that Commonwealth Defendants were motivated by an intentional desire to
discriminate when they refused to allow certain of Heppler's products into the Pennsylvania
liquor market.  (See generally Am. Compl.)  Furthermore, the Addenda attached to Heppler's
Response, containing notifications from the PLCB's Bureau of Product Management to Heppler
as to its rejection of his products, do no more than show that the PLCB was treating Heppler as it
treats any other vendor who applies for access to the Pennsylvania market.[6]  (Resp., Addenda

---

[6]       On a motion to dismiss, courts consider the complaint, its exhibits, matters of
public record, and documents that form the basis of a claim.  See Lum v. Bank of Am., 361 F.3d
217, 221 n.3 (3d Cir. 2004).  Documents that form the basis of a claim include those that are
integral to or explicitly relied on in the complaint.  See In re Burlington Coat Factory Sec. Litig.,
114 F.3d 1410, 1426 (3d Cir. 1997).  Documents are integral when the plaintiff's claims are

C-G.)

Finally, the face of Heppler's Amended Complaint suggests at least one rational basis for his exclusion from the Pennsylvania liquor market: that Commonwealth Defendants enjoy a legitimate monopoly of that market, and it is within their power under state law to decide which liquor products can be sold in Pennsylvania. Because Heppler has not alleged facts that show that Commonwealth Defendants intentionally discriminated against him, and because a rational basis exists for the challenged government action, Heppler's equal protection claim is not facially plausible, and therefore must be dismissed.

Heppler has alleged no facts to suggest the PLCB's decision to deny Heppler's requests to sell certain products in its stores violated the Constitution in any manner. There is no federal redress for a state administrative decision regarding what types of alcohol a person can or cannot sell in a state which has decided to exercise the monopoly authorized by the Twenty-first Amendment to the Constitution. See also Granholm v. Heald, 544 U.S. 460, 489 (2005) (explaining Twenty-first Amendment allows states to "assume direct control of liquor distribution"); 47 Pa. Stat. § 3-305(a) (granting PLCB discretion to determine the types and brands of alcohol to make available to the public). Heppler simply has not alleged any facts suggesting the PLCB has violated the Constitution in any way.

The Third Circuit has instructed district courts to grant leave to amend when a complaint

---

based on the document. See In re Donald J. Trump Casino Sec. Litig., 7 F.3d 357, 368 n.9 (3d Cir. 1993). Addenda C-G to Heppler's Response are integral to the claims in his Amended Complaint. They are the PLCB's denials of Heppler's requests to market certain products, and it is those denials that form the basis of Heppler's claim. (See Am. Compl. 1, 3.) The remainder of the Addenda – A, B, H, and I – do not fall within these categories and, therefore, the Court does not consider them for purposes of its Rule 12(b)(6) analysis. See Fed. R. Civ. P. 12(d).

is dismissed for failure to state a claim.  See Shane v. Fauser, 213 F.3d 113, 116 (3d Cir. 2000).

District courts nevertheless retain discretion to deny a plaintiff leave to amend his complaint

when amendment would be futile.  Foman v. Davis, 371 U.S. 178, 182 (1962).  "'Futility' means

that the complaint, as amended, would fail to state a claim upon which relief could be granted."

In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1435 (3d Cir. 1997).  Having already

granted Heppler one opportunity to amend his Complaint, the Court will exercise its discretion

and will not grant Heppler leave to further amend his complaint to reassert his antitrust and equal

protection claims.[7]  Heppler's Amended Complaint alleges actions by Commonwealth

Defendants that are within their power under state law and that are sanctioned by the United

States Constitution.  Accordingly, the Court finds that allowing a second amendment would be

futile.

---

[7]      While Commonwealth Defendants do not raise the issue, the Court notes that they
may be entitled to state action immunity from Heppler's antitrust claim stemming from the
Supreme Court's decision in Parker v. Brown.  317 U.S. 341, 352 (1943) (holding antitrust laws
do not bar anti-competitive restraints that sovereign states impose "as an act of government").
        The Third Circuit has acknowledged that when a state clearly acts in its sovereign
capacity it avoids the constraints of the Sherman Act and may act anti-competitively to further
other policy goals.  A.D. Bedell Wholesale Co. v. Philip Morris Inc., 263 F.3d 239, 255 (3d Cir.
2001).  State legislative action is "an act of the government" entitled to immunity under Parker.
317 U.S. at 350-51.  Because the PLCB maintains its monopoly over the sale of liquor in
Pennsylvania pursuant to the legislatively-enacted Liquor Code, the PLCB is entitled to
immunity from alleged Sherman Act violations.  See id.; see also 324 Liquor Corp. v. Duffy, 479
U.S. 335, 345 n.6 (1987) (dicta) (noting that when states exert complete control over the
distribution of liquor within their boundaries, such comprehensive regulation is immune under
Parker).

**VI.** **Conclusion**

For the foregoing reasons, the Court granted Defendants' Motion to Dismiss. An

appropriate Order was previously entered.

BY THE COURT:

_____

Michael M. Baylson, U.S.D.J.

O:\Todd\10-3430 Heppler v. PLCB\Heppler - MTD Memo (Erica) - FINAL.wpd